IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

NICK ADAM TRUJILLO,

    Petitioner,

v.                                                           Civ. No. 13-618 JCH/GBW

GERMAN FRANCO, *et al.*,

    Respondents.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER is before the Court on Petitioner's motion for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (*doc. 1*) and Respondents' Motion for Judgment on the Pleadings (*doc. 12*). Having thoroughly reviewed the pleadings and the record before the Court, I find Petitioner's claims to be meritless. I therefore recommend dismissing the petition with prejudice and granting Respondents' Motion for Judgment on the Pleadings.

    I.    **FACTUAL & PROCEDURAL BACKGROUND**

        **A. The Underlying Criminal Case**

On May 1, 2009, Petitioner was found guilty by a jury of his peers of the offense of second-degree criminal sexual contact of a minor, and was convicted in the Ninth Judicial District Court. *Doc. 8*, Ex. A at 1. The government presented evidence that, on or about January 28, 2008, Petitioner caused his girlfriend's daughter C.A., a minor child

under the age of thirteen, to touch him in a sexually intimate manner. *Id.*, Ex. F at 2-3. At a pretrial hearing held on April 27, 2009, the prosecution requested that the court excuse the case agent, Detective Randy Pitcock, from appearing at trial. *Id.*, Record Proper (RP) at 145; 08-CR-95 Hearing Apr. 27, 2009 at 2:31 p.m. [hereinafter Hrg. Apr. 27]. This request was granted over Defendant's objections, and Detective Pitcock did not testify. *Id.* In a judgment and sentence entered on October 22, 2009, Petitioner was initially sentenced to a term of 23 years in prison, which included sentencing enhancements because Petitioner was a habitual offender. *Doc. 8*, Ex. A.

On February 9, 2010, Petitioner filed a notice of appeal. *Id.*, Ex. E. In his Brief in Chief, he argued: (1) the trial court's refusal to compel the presence of Detective Pitcock deprived Petitioner of the ability to cross-examine him; (2) the trial court's refusal to compel the presence of Detective Pitcock deprived Petitioner of the ability to present his defense and of a fair trial; (3) the failure of the prosecution to produce another witness, Sylvia Montano, deprived Petitioner of a fair trial; (4) the failure of the prosecution to produce another witness, Sylvia Montano, deprived Petitioner of exculpatory evidence; (5) there was insufficient evidence to sustain a conviction; (6) that the assessment of his crime as criminal sexual contact of a minor in the second degree was incorrect. *Id.*, Ex. F. The Court of Appeals denied each of these claims except for the assessment of the degree of his crime, agreeing with Petitioner that he had committed criminal sexual contact in the third, not second, degree. *Id.*, Ex. N. Petitioner appealed to the New

Mexico Supreme Court, and his petition was dismissed on July 19, 2012. *Id.*, Ex. P. The government filed a petition for writ of certiorari as to the assessment of Petitioner's crime, against which Petitioner filed a cross-petition. *Id.*, Exs. Q, R. The New Mexico Supreme Court also denied these petitions, on August 1, 2012. *Id.*, Ex. T. The matter was remanded, and Petitioner's sentence was reduced to 14 years on October 10, 2012. *Id.*, Exs. C, U. Respondents stipulate that Petitioner is currently incarcerated. *Id.* at 2.

### B. Petitioner's State Habeas Proceedings

Petitioner filed his initial state habeas petition in the Ninth Judicial District on February 18, 2013, presenting eight grounds for relief: (1) new evidence; (2) ineffective assistance of counsel on the basis of the victim's alleged recanting of her version of events; (3) inability to confront Officer Pitcock because he did not testify the trial; (4) inability to cross-examine another (unnamed) key witness at trial; (5) inability to present past evidence of the victim's untruthfulness; (6) being convicted on hearsay evidence alone; (7) challenging his sentence enhancement because of his habitual offender status; (8) being convicted without physical evidence of his crime. *Id.*, Ex. V. Judge Stephen Quinn summarily denied the petition on March 29, 2013. *Id.*, Ex. W. Petitioner filed a petition for writ of certiorari on April 23, 2013. *Id.*, Ex. X. In this petition, he raised the following grounds: (1) trial court error in not compelling Detective Pitcock to appear at Petitioner's trial; (2) trial court error in permitting the trial to go forward based in part on the allegedly unreliable testimony of the victim; (3)

trial court error in failing to admit impeachment evidence regarding the victim; (4) ineffective assistance of counsel at trial and on appeal. *Id.* The petition was denied on May 8, 2013. *Id.*, Ex. Y.

## II. PETITIONER'S FEDERAL HABEAS PETITION

Petitioner filed his federal habeas petition on July 3, 2013, in which he initially set forth four claims as grounds for relief. *See generally doc. 1*. On November 18, 2013, the undersigned entered his Proposed Findings & Recommended Disposition (PFRD), concluding that Petitioner had failed to exhaust Ground 4 of his petition and should be allowed thirty days to voluntarily dismiss the unexhausted claim. *Doc. 16*. On December 18, 2013, the Court granted Petitioner's motion to dismiss Ground 4 and to proceed with his exhausted claims. *Docs. 17, 18*. I will now consider the following three grounds for relief, which Petitioner has raised and properly exhausted:

1. Violation of Petitioner's Sixth and Fourteenth Amendment rights because the trial court refused to compel Detective Pitcock's appearance and testimony;

2. Ineffective assistance of counsel for:
    a. Failing to cause Detective Pitcock and Sylvia Montano to appear and testify; and
    b. Failing to raise impeachment evidence against the victim.

3. Violation of Petitioner's Fourteenth Amendment rights because there was insufficient evidence to support his conviction.

**III.   STANDARD OF REVIEW**

A federal court can only grant the petition for writ of habeas corpus of a person in state custody if the state court adjudication of the petitioner's claims on the merits[1] resulted in a decision that was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The threshold question under § 2254(d)(1) is whether the law, as developed by the United States Supreme Court, is clearly established. *House v. Hatch*, 527 F.3d 1010, 1015 (10th Cir. 2008). This determination is dispositive of the § 2254(d)(1) analysis— "without clearly established federal law, a federal habeas court need not assess whether a state court's decision was contrary to or involved an unreasonable application of such law." *Id*. at 1017 (internal quotation marks omitted). "[C]learly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*." *Id*. at 1016. If Supreme Court precedent "gives no clear answer to the question presented, . . . it cannot be said that the state court unreasonably applied clearly established Federal law." *Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (citation omitted).

---

[1] A state court's summary dismissal of a claim is presumed to be an adjudication "on the merits" even if the court provided no reasoning to support its decision. *Harrington*, 131 S. Ct. 770, 785 (211). This presumption may be overcome only if "there is reason to think some other explanation for the state court's decision is more likely." *Id*. Petitioner has not argued, nor presented evidence indicating, that the trial court and New Mexico Supreme Court decisions on his habeas petition are not adjudications on the merits. *See doc. 8*, Exs. W, Y. I must therefore presume that they are.

5

If the court determines that there is relevant, clearly established federal law, it must consider whether the state court decisions are "contrary to" or "unreasonable applications of" that law. A state court decision is contrary to clearly established federal law if the state court (1) "applies a rule that contradicts the governing law set forth in Supreme Court cases," or (2) "confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from that precedent." *House*, 527 F.3d at 1018 (citing *Maynard v. Boone*, 468 F.3d 665, 669 (10th Cir. 2006)). A state court decision is an unreasonable application of clearly established federal law if (1) "it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts," or (2) it "unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply." *Id*. at 1018. An unreasonable application of law is "more than an incorrect application of federal law." *Id*. at 1019.

In order to succeed under § 2254(d)(2), a petitioner must show that the state court's adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). "Section 2254(d)(2) . . . is a daunting standard— one that will be satisfied in relatively few cases." *Byrd v. Workman*, 645 F.3d 1159, 1172 (10th Cir. 2011) (internal quotation marks omitted). "[A] state-court factual

determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 130 S. Ct. 841, 849 (2010). Rather, it is "whe[n] the state courts plainly misapprehend or misstate the record in making their findings, and the misapprehension goes to a material factual issue that is central to petitioner's claim, that misapprehension can fatally undermine the fact-finding process, rendering the resulting factual finding unreasonable." *Byrd*, 645 F.3d at 1171-72. When reviewing the application, the federal court must be "highly deferential" to the rulings of the state court. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

## IV. ANALYSIS

### A. Trial Court's Refusal to Compel Detective Pitcock's Testimony

#### 1. *Petitioner's Fourteenth Amendment Right to Due Process*

The state court's refusal to compel the prosecution to call Detective Pitcock as a state witness was neither contrary to nor an unreasonable application of federal law. Petitioner alleges he was denied his due process right "to compel the attendance of necessary witnesses in [sic] his behalf," notably the investigating officer in his case, Detective Pitcock. *Doc. 1* at 6. At a pretrial hearing held on April 27, 2009, the prosecution informed the court that Detective Pitcock would not be able to attend Petitioner's May 1, 2009 trial because he was going on vacation. RP at 146; Hrg. Apr. 27 at 2:31 p.m. Defense counsel argued that Detective Pitcock should be made available for cross-examination because he was the overseer of the entire case and issues could

come up at trial that would make his testimony critical. RP at 146; *see generally* Hrg. Apr. 27. The court refused to compel Detective Pitcock to appear as a state witness, and he did not testify. RP at 146; Hrg. Apr. 27 at 2:41 p.m. At the close of trial, the defense again argued that Detective Pitcock's testimony should have been compelled so that the defense could have questioned him regarding, *inter alia*, (i) prior, false allegations made by the victim, (ii) Mr. Trujillo's demeanor when arrested, and (iii) whether the Detective collected any evidence from the scene. RP at 168; 08-CR-95 Trial May 1, 2009 at 3:02 p.m. [hereinafter Trial]. On appeal, the New Mexico Court of Appeals found that there was no due process violation because "the district court did not prevent Defendant from presenting any evidence." *Doc. 8*, Ex. K at 9.

"The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations." *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973). This necessarily includes, at a minimum, a defendant's right to call witnesses on his own behalf. *Id.* "In order to establish a violation of his due process right to present evidence, a defendant must show that the evidence excluded by the trial court's ruling might have affected the trial's outcome; in other words, he must show that the evidence, if admitted, would have created reasonable doubt that did not exist without the evidence." *Patton v. Mullin*, 425 F.3d 788, 797 (10th Cir. 2005).

Here, we need not reach the question of whether Detective Pitcock's testimony would have affected the outcome of the trial because the trial court never excluded his

testimony in the first instance. The New Mexico Court of Appeals correctly recognized that, although the trial court refused to compel Detective Pitcock to testify as a witness for the state, Mr. Trujillo remained free to subpoena Detective Pitcock himself. *Doc. 8, Ex. N* at 9-10. Petitioner's counsel presumably did not believe that Detective Pitcock's testimony would be beneficial because he ultimately elected not to call him as a witness for the defense. *See* Hrg. Apr. 27 at 2:31 ("It's not the practice of the defense to subpoena the case agent.")

Moreover, Petitioner has cited to no law—nor is the undersigned aware of any—that would require the prosecution to call a witness on behalf of the government. If Petitioner "considered a witness critical to [his] defense, [he] should have called or attempted to call that person . . . . [T]he due process clause does not require the government to call witnesses simply for the sake of facilitating the defense's presentation of its own case."[2] *Pavlik v. United States*, 951 F.2d 220, 224 (9th Cir. 1991).

Because Petitioner was not prevented from calling witnesses on his own behalf and has presented no authority suggesting that the trial court should have compelled Detective Pitcock to testify for the government, the state courts' dismissal of this claim was reasonable.

---

[2] Of course, under *Brady v. Maryland*, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." 373 U.S. 83, 87 (1983). Petitioner does not, however, present a suppression argument with respect to the prosecution's declining to call Detective Pitcock.

### *2. Petitioner's Sixth Amendment Right to Confront Witnesses*

Petitioner next claims he was denied his Sixth Amendment right to confront Detective Pitcock when the trial court refused to compel his attendance at trial. *Doc. 1* at 6. The Sixth Amendment's Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const., amend. VI. This rule applies to both federal and state prosecutions. *Crawford v. Washington*, 541 U.S. 36, 42 (2004).

Petitioner's confrontation clause claim with respect to Detective Pitcock must fail, however, as the right to confront witnesses "attaches only to those witnesses who *actually testify* against the defendant." *Garcia v. Bravo*, 199 F. App'x 692, 694 (10th Cir. 2006) (emphasis added). Detective Pitcock did not testify at trial, nor is there any indication in the record that any statements made by him were offered into evidence. Petitioner was therefore not barred from cross-examining a witness against him, as "[n]either the government nor the district court precluded [Petitioner] from questioning [Detective Pitcock]." *United States v. Green*, 178 F.3d 1099, 1109 (10th Cir. 1999).

Because Detective Pitcock's testimony was never presented to the jury, Petitioner's "inability to question [him] was not a constitutional violation," and the state court's dismissal of this claim was neither contrary to nor an unreasonable application of federal law. *Garcia*, 199 F. App'x at 694.

B. <u>**Ineffective Assistance of Counsel**</u>

Petitioner claims that his trial counsel was ineffective for (1) failing to cause Detective Pitcock and Sylvia Montano to appear and testify; and (2) failing to raise impeachment evidence against the victim. *Doc. 1* at 8. It is clearly established federal law that the Sixth Amendment of the U.S. Constitution guarantees the right to effective assistance of counsel at trial. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). For Petitioner to succeed on his claims of ineffective assistance of counsel, he must demonstrate both that (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "the deficient performance prejudiced the defense." *Id*. at 687-88. For counsel's performance to fall outside the bounds of professional reasonableness, Petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. As to the first prong, "[t]he question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington,* 131 S. Ct. at 788. "Rare are the situations in which the 'wide latitude counsel must have in making tactical decisions' will be limited to any one technique or approach." *Id.* at 789. To satisfy the second prong, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine

11

confidence in the outcome." *Strickland*, 466 U.S. at 694. A court "may address the performance and prejudice components in any order, but need not address both if [Petitioner] fails to make a sufficient showing of one." *Cooks v. Ward*, 165 F.3d 1283, 1292–93 (10th Cir. 1998).

Further, when reviewing a claim of ineffectiveness of counsel which has been denied by the state court, the burden of demonstrating ineffectiveness is even heavier— "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Harrington*, 131 S. Ct. at 788 (internal citations and quotations omitted). "When § 2254 applies, the question is not whether counsel's actions were reasonable[; rather, t]he question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

1. ***Failure to Cause Detective Pitcock or Sylvia Montano to Testify***

Petitioner argues that his trial counsel was ineffective for "allow[ing] Petitioner [to] be tried and found guilty without making it imperative that two key witnesses[, Detective Pitcock and Sylvia Montano,] be present and questioned." *Doc. 1* at 8. Specifically, Petitioner believes that these two witnesses had exculpatory evidence and could have called the victim's testimony into question. *See, e.g., doc. 8*, Ex. F at 3.

"[T]he decision of which witnesses to call is quintessentially a matter of strategy for the trial attorney." *Boyle v. McKune*, 544 F.3d 1132, 1139 (10th Cir. 2008); *see also United States v. Miller*, 643 F.2d 713, 714 (10th Cir. 1981). "Counsel must be allowed

leeway in prioritizing the evidence and witnesses she puts on." *Hooks v. Workman*, 689 F.3d 1148, 1190 (10th Cir. 2012). Even the failure to call witnesses for the defense does not, in itself, establish that counsel was constitutionally ineffective. *See Parker v. Jones*, 423 F. App'x 824, 828 (10th Cir. 2011).

In Petitioner's case, the decision of whether or not to call Detective Pitcock or Sylvia Montano was ultimately a tactical decision left to the discretion of his attorney. Although the record indicates that the defense would have appreciated an opportunity to *cross-examine* these witnesses if they were called during the government's case-in-chief, Petitioner's counsel could have easily concluded that calling them as witnesses for the defense was not sound trial strategy. Counsel may have determined that it would be more effective to poke holes in the prosecution's case through impeachment of the state's witnesses than to provide independent testimony from Detective Pitcock or Ms. Montano. Further, counsel may have believed that it would have been more difficult to control the witnesses on direct examination, or he could have feared that the state would bring forth testimony during cross-examination that would overshadow any exculpatory information that the defense could elicit. *See Boyle*, 544 F.3d at 1138 ("For as easily as one can speculate about favorable testimony, one can also speculate about unfavorable testimony."). There are any number of reasons why Petitioner's trial attorney could have resolved not to call these witnesses, and the Court should "indulge in a strong presumption that counsel's conduct falls within the wide range of

13

reasonable professional assistance and presume that counsel's conduct is sound strategy." *United States v. Page*, 480 F. App'x 902, 906 (10th Cir. 2012) (internal quotations omitted).

Additionally, Petitioner has not shown that the result at trial would have been different had Detective Pitcock or Ms. Montano testified. It is very possible that, because Detective Pitcock had headed the investigation against Petitioner, his testimony could have actually hurt Petitioner's case. Even the trial court noted that Detective Pitcock's absence would most likely impair the state's case more than it would damage Defendant's. *See* RP at 146; Hrg. Apr. 27 at 2:41 p.m. ("It seems like the state is really taking more of a chance with [Detective Pitcock] being gone than the defense.").

Petitioner has failed to establish that his counsel's performance was "outside the wide range of professionally competent assistance," or that he was prejudiced by counsel's performance at trial. *Page*, 480 F. App'x at 907. The state court was therefore not unreasonable in dismissing this claim.

### 2. *Failure to Present Impeachment Evidence*

Petitioner next contends that his counsel's performance was ineffective because he failed to use "due diligence to have the alleged victim's prior history of reporting 'false accusations' presented to the jury and Court as well as the prior knowledge of the matter by other witnesses as well as the detective." *Doc. 1* at 8.

14

As an initial matter, defense counsel did, in fact, attempt to impeach the victim's testimony, and was at least partially successful in doing so. He asked C.A. several questions regarding whether she had made false accusations in the past, which she denied. RP at 152; Trial at 9:40 a.m. Counsel also elicited evidence from the victim that she had a motive to incriminate Petitioner because she did not like the fact that he had been spending a lot of time with her mother. RP at 153; Trial at 9:45 a.m. Finally, he called the victim's testimony into doubt as to whether she had truly seen Petitioner's eyes open on the evening in question. RP at 153; Trial at 9:45 a.m.

Counsel further attempted to discredit C.A.'s testimony by calling her mother, Christian Lynn Herrera, as a witness. RP at 164; Trial at 13:28 p.m. Ms. Herrera contradicted much of the victim's testimony; most significantly, she denied that C.A. was even at her residence at the night in question. RP at 164; Trial at 13:33 p.m.

While Petitioner contends that defense counsel should have done more to impeach the victim's testimony, "[t]here are countless ways to provide effective assistance in any given case," and "[t]rial counsel does not act unreasonably in failing to call every conceivable witness that might testify on a defendant's behalf." *Strickland*, 466 U.S. at 689; *Hooks v. Workman*, 689 F.3d 1148, 1190 (10th Cir. 2012). Here, counsel impeached the victim's testimony both on cross-examination and through the testimony of a defense witness. I cannot, therefore, say that the state court was unreasonable in concluding that Petitioner's counsel was not ineffective on this basis.

C. **<u>Sufficiency of the Evidence</u>**

Finally, Petitioner claims that there was insufficient evidence presented to support his conviction because the sole evidence consisted of the victim's testimony, and because "the jury did not hear of the alleged victim's prior false accusations, nor testimony from family members and witnesses stating that they did not believe her." *Doc. 1* and 9.

For a conviction, the Fourteenth Amendment's Due Process Clause requires the prosecution to prove each element of an offense beyond a reasonable doubt. *See In Re Winship*, 397 U.S. 358, 364 (1970). "In evaluating a sufficiency of evidence claim, the Supreme Court held that it is not for the court to inquire whether it believes the evidence established guilt beyond a reasonable doubt, but whether, after considering the evidence in the light most favorable to the prosecution, a rational jury could conclude that each element of the charged crime was proven beyond a reasonable doubt." *Wright*, 42 F. App'x 375, 376 (10th Cir. 2002) (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)). This review is "sharply limited," and federal courts are not to weigh conflicting evidence or consider the credibility of witnesses. *See Messer v. Roberts*, 74 F.3d 1009, 1013 (10th Cir. 1996). "The inquiry is based upon the entire record and the reasoning process actually used by the trier of fact, known or not, is not considered." *Torres v. Mullin*, 317 F.3d 1145, 1151 (10th Cir. 2003) (citation omitted).

The New Mexico Court of Appeals held that "[t]he State presented sufficient evidence to support Defendant's conviction" for criminal sexual assault of a minor in the third degree. *Doc. 8*, Ex. N at 16. To prove this offense, the prosecution had to establish that Petitioner intentionally caused C.A. to touch his unclothed intimate parts, and that C.A. was a child under thirteen years of age at the time. *See* N.M. STAT. ANN. § 30-9-13(C) (1978).

At trial, C.A. testified that, on the night in question, Petitioner grabbed her hand and "put it in his middle part" while she was sleeping. RP at 149; Trial at 9:15 a.m. The victim confirmed that she "touch[ed] skin" and that she believed Petitioner was awake at the time because she "saw his eyes open a little bit." RP at 150; Trial at 9:15 a.m. Based on this testimony alone, the jury could have reasonably concluded beyond a reasonable doubt that Petitioner intentionally caused C.A. to touch his unclothed intimate parts. *See Wingfield v. Massie,* 122 F.3d 1329, 1333 (10th Cir. 1997) ("[A] jury is permitted to draw inferences of subjective intent from a defendant's objective acts.").

Petitioner further claims that "the jury did not hear . . . testimony from . . . witnesses stating that they did not believe [the victim]." *Doc. 1* at 9. This is not entirely accurate, however, as C.A.'s account of the events was categorically contradicted by her mother's testimony. But even if the defense had called additional witnesses who stated they did not believe the victim, the jury would still have been free to credit C.A.'s testimony. It is the role of the jury to weigh the evidence presented, and, "[t]o the

17

extent that the evidence conflicts, we accept the jury's resolution of conflicting evidence and its assessment of the credibility of witnesses." *United States v. Sapp,* 53 F.3d 1100, 1103 (10th Cir.1995) (citations and internal quotation marks omitted). The state court was therefore not unreasonable in finding that "C.A.'s testimony regarding the incident was sufficient for a reasonable jury" to find Petitioner guilty of criminal sexual assault of a minor. *Doc. 8*, Ex. N at 4.

## IV. CONCLUSION

For the reasons set forth above, I find that Petitioner has failed to establish that the state court adjudication of his claims resulted in a decision that involved an unreasonable application of federal law or was based on an unreasonable determination of the facts in light of the evidence presented. I further find that Petitioner's claims present no need for an evidentiary hearing. I therefore recommend that the Court GRANT Respondents' Motion for Judgment on the Pleadings (*doc. 12*) and DISMISS his petition (*doc. 1*) with prejudice.

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**